Robert P. Lewis, Esq. Town Attorney Town of Ledyard
You have asked whether a town may purchase a parcel of land available only as a single parcel and use part of the parcel for park purposes but sell the remainder to adjoining property owners, reserving easements for utility lines — for gas, water and sewer — and for a pedestrian walkway.
You advise us that the parcel is a seven-mile-long right-of-way owned by the Lehigh Valley Railroad, now in bankruptcy. The right-of-way has been abandoned and is for sale. We also understand that your town has a statutory preference for the purchase of the land on a negotiated basis.
Under section 64 (2) of the Town Law, you are authorized to purchase real property. The only limitation on the purchase is that it be for a public purpose, a limitation that applies to all expenditure of public moneys. In the case of the abandoned right-of-way, there is an obvious public purpose behind the purchase of the available parcel — that is, the establishment of a park. There are also two subsidiary public purposes — the planned establishment of a public pedestrian walkway and the possible laying of utility lines — both of which would be preserved by reservation of easements upon sale of excess land not required for the park.
The essential question is whether the public purpose of establishing a park is destroyed because it is known in advance that a substantial portion of the parcel will not be used for that purpose but will be sold almost immediately. There are several reasons for not accepting such a narrow view of public purpose under the circumstances present here. For one thing, the opportunity to purchase under favorable terms by virtue of a statutory preference ought not to be lost simply because the opportunity is conditioned upon purchase of the entire parcel. For another thing, immediate resale lessens the long-range taxpayer cost of establishing a public park. For example, the town could purchase the entire parcel for park purposes in the expectation that some years hence, the additional land could be developed as a park. If at some future time a determination was made that expansion was no longer feasible, the excess land could be sold. (Under certain circumstances, special legislation might be necessary, but this is normally forthcoming if the land has never been used for park purposes.) Likewise, the parcel could be purchased for the establishment of the walkway and the excess sold later after the walkway was in place. Both of these options could be expensive, in part because during the intervening period the land would be off the tax rolls, and in part because the purchasers might find the land without the walkway not so attractive as all the land subject to an easement. Finally, the sale of the unneeded land to adjoining landowners assures the preservation of the present land-use pattern whereas a failure to purchase the parcel might or might not result in a preservation of the land-use pattern.
We conclude that the purchase of the land in question under the unique circumstances involved is a purchase of land for a public purpose so long as some of the land directly or indirectly will be used specifically for a public purpose. (We recognize that the rule might be different if the land were to be obtained by condemnation. It is one thing to purchase land from a willing seller; it is another thing to obtain land by compulsion, knowing that a large percentage of the land is not needed.)